R. C. Williams and Company, Inc., of New Jersey (successor to Packman Brothers, Inc.) v. Commissioner.
R. C. Williams & Co. v. Commissioner
Docket No. 90575.
United States Tax Court
T.C. Memo 1963-58; 1963 Tax Ct. Memo LEXIS 288; 22 T.C.M. (CCH) 229; T.C.M. (RIA) 63058; February 27, 1963
*288 Frederick A. Levy, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in income tax and additions to tax against petitioner as follows: Additions to Tax,
IRC 1939
Sec.
Sec.
Period or Year
Deficiency
293(a)
293(b)
9-1-49 to 12-31-49
$10,098.19
$ 5,049.10
1950
4,910.07
2,455.04
1951
$ 9,529.63
$ 4,764.82
1952
5,673.37
2,836.69
1953
1,440.71
$72.04
1954
16.65
$31,668.62
$72.04
$15,105.65
The issues presented are: 1. Has petitioner met the burden of proof of error, in whole or in part, in respondent's determination of deficiencies in income taxes for the period September 1 to December 31, 1949, and the calendar years 1950 to 1954, inclusive, and addition to tax for the calendar year 1953 under section 293(a) of the Code of 1939? 2. Was a part of each deficiency for the period September 1 to December 31, 1949, and the calendar years 1950 to 1952, inclusive, due to fraud with intent to evade tax? 3. Are deficiencies and additions to tax for the period September 1 to December 31, 1949, and the calendar years 1950 to *289 1953, inclusive, barred by the statute of limitations in whole or in part? Findings of Fact For the period September 1 to December 31, 1949, and the calendar years 1950 to 1954, inclusive, petitioner, a New Jersey corporation, operated a wholesale grocery establishment under the name of Packman Brothers, Inc., at Atlantic City, New Jersey. For the period September 1 to December 31, 1949, and the calendar years 1950 and 1951, petitioner filed income tax returns with the collector of internal revenue for the first district of New Jersey. For the calendar years 1952, 1953 and 1954, petitioner filed income tax returns with the district director of internal revenue, Camden, New Jersey. Hereinafter references to petitioner will include references to Packman Brothers, Inc. Petitioner was formed effective September 1, 1949, as a result of the purchase by Samuel Packman of the partnership interest of his sister-in-law, Henrietta Packman, in Packman Brothers, a partnership, at a price of $200,000. Samuel became the sole owner of petitioner's stock, was president of the company, and controlled its operations during the entire period herein involved. In acquiring the partnership interest *290 Samuel paid Henrietta $50,000 in cash, which he secured primarily from loans. This exhausted his and his wife's savings. Another $75,000 paid to Henrietta was borrowed by the petitioner and applied to the purchase price. The balance of $75,000 was an obligation of Samuel accepted by Henrietta. Prior to August of 1955, Samuel paid Henrietta $50,000 of this obligation. Because of the above purchase, Samuel was short of cash during all the years involved herein. During the period September 1 to December 31, 1949, petitioner made sales to the State of New Jersey. Three specific sales which in the aggregate totaled $10,202.06 were omitted from the sales records of the petitioner. On each occasion when petitioner received a check in payment of these sales, the amount received was, upon specific written instructions of Samuel, treated as an advance from Samuel to the petitioner on its corporate records and was omitted from sales. During the year 1950, petitioner likewise made sales to the State of New Jersey. A specific sale in the amount of $4,940.17 was omitted from the corporate sales records of petitioner. The amount received for such sale was, upon specific instruction of Samuel, *291 credited to his advance or loan payable account in the corporate records and was omitted from sales. During the year 1951, petitioner omitted from income the receipt of $1,898.90 from the Blatz Brewing Company for the return of empty bottles and cartons. Said amount was recorded on petitioner's records as a loan to the petitioner from Samuel. In addition to the specifically omitted receipts referred to above, petitioner on its books credited to Packman's loan account the following amounts: Period or Year
9-1-49 to 12-31-49
$ 6,759.19
1950
4,359.83
1951
5,603.10
1952
4,740.00
1953
1,800.00
$23,262.12
When interviewed by the representatives of the internal Revenue Service, neither Samuel nor any other representative of the petitioner were able to explain away these credits. During the years 1949 through 1952, Samuel made deposits on his personal account at the Boardwalk National Bank, Atlantic City, New Jersey, in the following amounts: 1949
$ 58,520.98
1950
18,450.00
1951
16,790.92
1952
7,620.94
$101,382.84
During the period September 1 to December 31, 1949, and years 1951 and 1952, these deposits contained the following *292 amounts which Packman, when interviewed by representatives of the Internal Revenue Service, was either unable or unwilling to explain the source of the funds deposited: Period or Year
9-1-49 to 12-31-49
$ 9,450
1951
8,375
1952
6,185
$24,010
During the years 1949 through 1952 Samuel reported net or taxable income on his filed joint income tax returns as follows: Year
Net Income
1949
$12,445.21
1950
8,014.08
1951
13,767.93
1952
12,371.19
1953
12,211.52
$58,709.93
Taxable
1954
$ 9,688.41
9,688.41
$68,398.34 Samuel had no sources of nontaxable income during the years in question. All unreported sales credited to Samuel's loan or advance account were subsequently dispensed by the petitioner for Packman's personal benefit. The petitioner, acting through its president, Samuel Packman, admitted omitting corporate sales during the period herein involved with the knowledge that all corporate income tax returns filed during the same period would be false and fraudulent. Prior to the expiration of time fixed by law for the assessment and collection of the deficiencies for the taxable year 1953, petitioner signed *293 a timely "consent" extending the period for assessment and collection of deficiencies which consent was filed with and signed by the Commissioner. On January 12, 1956, Samuel was indicted for wilfully and knowingly attempting to evade and defeat a part of the income tax due and owing by petitioner for the years 1949 and 1950. On January 20, 1956, Samuel pleaded nolo contendere to both counts of the indictment. On May 17, 1956, he was fined $10,000 on count one and imposition of sentence was suspended on count two. He was placed on probation for the period of five years, a condition of which was that after final determination he pay the full amount of tax, penalty and interest due. A part of each deficiency for the period September 1 to December 31, 1949, and years 1950 through 1952 is due to fraud with intent to evade tax. For the taxable period September 1 to December 31, 1949, and taxable years 1950 through 1952, inclusive, petitioner filed false and fraudulent returns with intent to evade tax. Opinion As will appear infra, we hold that none of the deficiencies or additions to tax are barred by limitations. Petitioner has completely failed to meet the burden of proof of *294 error on the part of respondent with respect to the deficiencies determined for the period September 1 to December 31, 1949; the calendar years 1950 to 1954, inclusive, and the addition to tax under section 293(a) of the Code of 1939. We sustain the respondent accordingly. On the issue of fraud, the burden rests with respondent to prove such fraud by clear and convincing evidence, independent of any presumption of correctness of his determination. The fraud problem arises with respect to the period September 1 to December 31, 1949, and the calendar years 1950 to 1952, inclusive. During the period September 1 to December 31, 1949, and the calendar year 1950, petitioner, at the direction of its president and sole stockholder, deliberately omitted from gross income receipts from substantial sales and credited the receipts to advances or loan accounts for the benefit of its president. Much the same was done in 1951 with respect to receipts from a brewery for return of empty bottles and cartons. In addition to the foregoing, petitioner, on its books, credited substantial amounts to Packman's loan account in each of the taxable years in which fraud is involved. The pattern is substantially *295 the same as the treatment of omitted receipts referred to above, and from a consideration of the entire picture, a clear inference arises to the effect that the source of such credits were receipts from sales omitted from gross income. An opportunity was given to Packman by investigating agents to explain these items. As to some he claimed inability, and as to others, unwillingness to do so. Upon consideration of all of the relevant facts, we hold that part of the deficiency in each period in which fraud was alleged was due to fraud with intent to evade taxes, and each return for each such period was false and fraudulent with intent to evade taxes. In view of our determination as to fraud, the defense of limitations may not be availed of for the period September 1 to December 31, 1949, or for any of the calendar years 1950 to 1952, inclusive. Since the statutory notice of deficiency for 1953 was transmitted prior to the date to which limitations was extended by proper and timely waiver, the defense of limitations does not apply to that year. No issue as to limitations is raised with respect to the year 1954. Decision will be entered under Rule 50.